Will the attorneys who are going to orally argue please come to the podium and introduce yourselves to the court. Good morning your honors. My name is Autumn Renee Fincher from the office of the State Appellate Defender and I represent Tommy Naylor. Good morning your honors. My name is Sharon Arnold Cantor. I'm an assistant state's attorney and I represent the people of the state of Illinois. Okay. Each side will have 15 minutes to argue. Appellant reserve from your 15 minutes whatever portion you want to use for a rebuttal. Appellant please proceed. Oh by the way, the third member of our panel is Justice Liu who is unavailable today, however she will be listening to the audio tapes of the arguments and will be joining in the decision of the court. Appellant please proceed. Good morning. Again, my name is Autumn Renee Fincher from the office of the State Appellate Defender and I represent Tommy Naylor. I would like to focus my argument today on the first issue regarding Naylor's aggravated criminal sexual assault conviction, but I'd be more than happy to answer any questions that your honors have regarding the other crimes evidence issue too. And I would also like to reserve five minutes for rebuttal. Thank you. The issue presented in this case is very clear. What is the meaning of the first clause of section A1 of the aggravated criminal sexual assault statute? The way the statute is written is very clear. A defendant can be guilty of aggravated criminal sexual assault under section 12-14A1 if during the assault he displays, threatens to use, or uses a dangerous weapon, or if he displays, threatens to use, or used an object fashioned or utilized in such a way that would lead the complainant to reasonably believe it to be a dangerous weapon. But that's not how the state charged it in this case. The indictment specifically alleged that Naylor threatened to use a dangerous weapon. And the indictment made no reference to the second way that a person could be guilty under section A1. So this case presents a simple but unique question. Where the state charges that a defendant committed ACSA by threatening to use a dangerous weapon, whether the state must then prove the defendant actually had a dangerous weapon. And the answer to that question is yes. So that's why we're asking this court not to reverse Tommy Naylor's convictions outright, but to vacate his conviction entered under section A1, vacate the corresponding 10-year sentencing enhancement, and enter judgment on count two. So focus on the problem as you see it. I'm sorry? Focus on the problem as you see it. The problem as I see it is that the state here charged that Tommy Naylor during the assault used a dangerous weapon, threatened to use a dangerous weapon. They never proved that the object that CB saw in the defendant's hand was in fact a dangerous weapon, or more specifically a cutting instrument. The statute provides for that, but unfortunately the state didn't charge the second clause of A2 that the defendant used an object in such a way as to lead the complainant to believe it to be a weapon. Did the victim say she saw what the object was? Never. She maintained at trial on direct and on cross that she never saw what the object was. She said she believed it was a knife, but her reasonable belief about what that object was is irrelevant. Her reasonable belief would only be relevant under the second clause. The defendant used the object in a way to lead her to believe it was a dangerous weapon. So if a defendant had his hand in his pocket and said, if you don't do what I ask you to do, I'm going to shoot you, and never displayed anything at all other than having his hand in his pocket, you're saying that that's not sufficient? That would be sufficient under clause two, that he had his hand in his pocket, or he acted in such a way as to lead the complainant to believe that he had a weapon on him. But here, the state just charged, very simple, the indictment was very short. Tommy Naylor committed ACSA during the assault, threatening the complainant with, or threatened to use a dangerous weapon. Well, as I understood your argument, your argument was that nothing was seen. So the victim didn't know whether the defendant had anything or not. And that if you look at the statute, it says the accused displayed, or threatened to use, or used a dangerous weapon. In other words, displayed, threatened to use it, or displayed it, or a dangerous weapon, or any other object that could be used as a dangerous weapon. So it seemed to me, I thought your argument was the lack of display was the issue. The fact that the state didn't charge that he displayed a weapon. Well, actually, display and use, under the first clause of section A1, display and use requires that he- No, it's displayed or used. Displayed or used, both of those require the contemporaneous presence of a weapon. So our reading of the statute is that the phrase threatened to use would necessarily also require the defendant to at least, at the very least, have a weapon. And here, the evidence never established that. So if we were to read section A1 any broader than I've urged this court to, that threatening to use a weapon doesn't require this state to prove the defendant actually had a weapon, it would also, not only is it illogical, it would also render another provision of the ACSA statute completely unnecessary. Under section A3, the defendant is guilty of ACSA if he acted in such a manner as to threaten or endanger the life of the complainant. Here, Kneeler was charged under A1 and A3. The prosecutor, in closing argument, cited the evidence that Kneeler committed ACSA under A1. He told CB, I will cut you. He had his hand behind his back, and he threw the object on the front seat of the car, and during the assault, he kept reaching for it. That same evidence, I will cut you, having his hand behind his back, and reaching up for the object, was the same evidence that the prosecutor told the jury proved that Kneeler was guilty of ACSA under A3. So that's another problem with applying a broad reading to A1, because if we were to do that, those are the prosecutor's own words, almost the same, such that A3 would actually be redundant. Looking at the legislative intent behind A1 also supports our reading of that section to require the state to prove the object in Kneeler's hand actually was a weapon. In 2003, the legislature enacted a 10-year sentencing enhancement to apply to all convictions entered under A1. This section applies to, A1 applies to all weapons, excluding firearms. The only other provisions in the ACSA statute that carry sentencing enhancements are those where the defendant was armed with a firearm, he personally discharged a firearm, or he personally discharged a firearm, causing great bodily harm or death. So under the provisions relating to assaults where a firearm was involved, the state would necessarily have to prove the defendant actually had a firearm. You can only be armed with a firearm or discharge a firearm if you actually, in fact, have a firearm. So if the state would have to prove the defendant had a firearm to get the sentencing enhancement in those cases, why, where the weapon is one other than a firearm, would the state be absolved of proving that exact same element, the defendant actually had a weapon? So to use an example, if we were to interpret the first clause of A1, again, my argument is limited to the first clause of A1 because that's how the state charged it. A defendant would not be guilty of ACSA if he just told the complainant, I will shoot you, and didn't have a gun. But he would be eligible for the sentencing enhancement if he said, I will stab you, or here, I will cut you, and did not have a knife. So it doesn't make sense, then, that Naylor was convicted of ACSA under A1 where there's no proof. There is absolutely no proof as to what was in his hand, much less that it was a dangerous weapon. So under the facts of this case, there can be no dispute that the state didn't prove that Naylor threatened the complainant with a dangerous weapon. As your honor, we talked earlier about the evidence that was presented at trial. CB consistently testified that she never saw what Naylor had behind his back. She thought it was a knife because Naylor said that he would cut her. But again, her reasonable belief as to what that object was doesn't matter under the particular way that the state charged this offense. It would only matter if the state had charged the second clause of A1 that Naylor used, threatened to use, or displayed an object fashioned or utilized in such a way as to lead CB to believe that it was a weapon. The state did not charge that here. The state specifically alleged that Naylor threatened to use a dangerous weapon. As such, the state was required to prove exactly that, that he had a dangerous weapon. And since the state never proved that the object in Naylor's hand was, in fact, a dangerous weapon, we ask this court to reverse his conviction for ACSA under Section A1, vacate the corresponding 10-year sentencing enhancement, and enter a conviction for ACSA under Count 2. Thank you. Thank you. Thank you. May it please the court. My name, again, is Sharon Arnold Cantor. I'm an assistant state's attorney, and I represent the people of the state of Illinois. Counsel is correct in stating that the way the statute is written in Section A1 is very clear. That is absolutely true. The statute states that in the course of committing an aggravated criminal sexual assault, the defendant used, displayed, or threatened to use a dangerous weapon. That language is clear and unambiguous, and the plain meaning is exactly what it says it means. The defendant contends he was not proven guilty beyond a reasonable doubt. The standard of review in this case is, in the light most favorable to the people, could any rational trier of fact find the defendant guilty beyond a reasonable doubt? The answer is absolutely yes, and that's exactly what the jury in this case did. The jury was presented with direct and circumstantial evidence from which they can make reasonable inferences, and they found the defendant guilty of aggravated criminal sexual assault while threatening the use of a dangerous weapon. The defendant agrees that the testimony was completely credible, that the physical evidence was compelling. However, the defendant argues that he could not be found guilty of having a dangerous weapon because the victim didn't see that object. We know, and the defendant agrees, that when the character or nature of an object is doubtful or the manner of its use is in question, it is a question of fact for the jury to decide.  In this case, the trier of fact was presented with uncontested and uncontroverted evidence of the defendant's words and actions, that the defendant held his hand behind his back when he grabbed the victim off the street. He told her, don't say nothing, don't scream, or I'll cut you, as he continued to hold his hand behind his back and dragged her to his SUV. What if he had nothing in his hand? It doesn't make a difference. The statute is saying just a mere threat of using anything, any use of force or threat is sufficient. In this particular situation, it's the threat of the use of the deadly weapon. And that's correct, the victim does not need to see the weapon in question. How do we know there was a deadly weapon? Because of the defendant's words, and the defendant's actions, and the circumstantial evidence that the people provided to the trier of fact in the form of the other crimes evidence in which the defendant committed two other acts of aggravated criminal sexual assault while using a screwdriver or a knife. Because the trier of fact has the opportunity to hear the totality of the evidence, not just the direct evidence in the case from the testimony and the physical evidence. That evidence was admitted for identity purposes, wasn't it? And propensity? For propensity, that's correct, Your Honor. It wasn't used to establish by circumstantial evidence or direct evidence that a dangerous weapon was involved. Well, respectfully, that the evidence presented with the other crimes was for the propensity for the defendant who has committed aggravated criminal sexual assaults while using deadly weapons to a cutting instruments, a screwdriver, or a knife. So that's circumstantial. Well, what if the defendant had a beanie baby in his hand, and never displayed it, but we don't know what it was. And he told the victim, I'm going to hurt you, harm you, threaten you with this object that nobody sees or knows what it was. How does that prove beyond a reasonable doubt that a dangerous weapon was involved in the transaction? See, I took the admission of the other crimes by Judge Sacks more towards the question of identification and propensity to commit this act of violence against a woman, not as to establishing beyond a reasonable doubt that a dangerous weapon was involved in the transaction. So that's the dilemma, I think, that the defendant is raising. Now, clearly, if the person had a gun and she saw a gun and said, if you don't do what I tell you to do or a knife, I'm going to hurt you, cut you, shoot you, and then threw it in the front seat and she never saw it again, that probably would be sufficient if the jury was so convinced. But where nobody sees anything, how can you say that a dangerous weapon was involved? And that's the question of proof that the defendant, I think, is raising. So if you can address that, please. Certainly, Your Honor. I think you've opened the door to many issues, and I'd like to address them each at a time. The first issue that Your Honor brings up is the plain meaning of the statute. The statute states, use, display, or threaten to use a dangerous weapon. It doesn't say use and threaten or use and display. It says threaten to use. It's focused on a dangerous weapon. So let's focus on the dangerous weapon. Don't you have to prove that a dangerous weapon was involved? We have absolutely proved that beyond a reasonable doubt based on the defendant's words. That don't scream, don't say nothing, or I'll cut you. The fact that he's holding his hand behind his back. The fact that when the victim, when he gets into the car to drive the victim away, he throws the object in the front seat. That when he goes into the back seat of the car to sexually assault her, that he, and she resists. She resists taking off her belt. That he reaches toward that object. That he threatens to cut her three to four times throughout the course of the assault, and threatens to kill her five to six times. But the jury has the opportunity to evaluate the totality of the evidence. And circumstantial evidence is just as powerful, just as relevant as direct evidence. It's reasonable inferences made from the facts presented. And the fact that circumstantial evidence was presented to the trier. In fact, with regard to the defendant's propensity to commit aggravated criminal sexual assaults while using cutting instruments. Be it a screwdriver, be it a knife. The jury could absolutely make a reasonable inference that the object that the defendant had behind his back was in fact a dangerous weapon, a cutting instrument. And it's extremely important to look at this in the light most favorable to the people, and to look at the statute. Because the narrow interpretation that the defendant is putting forth to you does several things. One, it ignores well-established statutory construction, where the plain meaning of the statute is clear and unambiguous. The reviewing court should not resort to extraordinary aides to statutory construction. And we have two. The statutory construction, frankly, is just a question of dangerous weapon. Was there a dangerous weapon? All the defendant had to do. Displayed or threatened in this incident. But your honor is adding or to the threatened part. Did he use a dangerous weapon, displayed a dangerous weapon, or threatened to use a dangerous weapon? And what's the evidence of a dangerous weapon in this case? The evidence of the dangerous weapon? His words? His words, his actions, as well as the proof of other crimes evidence that the defendant in the past had a propensity to commit aggravated criminal sexual assaults while using a cutting instrument. If we adopt this argument, and we talk about the proof of the dangerous weapon, we're not doing this in a vacuum. There have been two courts, and your colleagues in the Second District and the Fourth District have addressed this issue specifically. In People v. Daniel, the victim invited the defendant into the car. And what People v. Daniel stated was that the words threatened to use mean exactly what they say. And nothing more is required for the element to be proved beyond a reasonable doubt. Now, People v. Leach and the Fourth District, which was decided after the amendment to the statute, agreed with Daniel and explained the legislative intent for that purpose. The legislative intent for that purpose specifically is that the use and display should be punished equally with the threat to use. Why is that? Because a threat to use a dangerous weapon could compel the victim's value judgment on whether or not to resist, or whether or not to signal for help. And that could be chilling. The mere threatening to use a dangerous weapon is the same as it would be to use it. And it would also render the word threatened superfluous in the statute, because the use of a deadly weapon, excuse me, a dangerous weapon, is inherently a threat. Using it, pointing it, in the same way as a display. Threatening to use and use it, clearly. Right, and displaying the same. Let me ask you something. If someone walks into a bank and has their hand in their pocket, like the old movies where you stick them up, and you have the hand in the pocket, and say, give me all your money, and they walk out of the bank with the money, and are charged with armed robbery, and no gun is displayed, and no proof that a gun is in the defendant's hand, is that person guilty of armed robbery by robbery with use of a dangerous weapon? Or is it simply robbery, use of force, or threatened use of force? I would submit to your honor that the person would be guilty of aggravated robbery. Because this is the elevation of a crime or a sentencing enhancement for the indication or a threat to use a deadly weapon, where none is recovered or none is actually seen, is not uncommon in our criminal code. There's robbery, which is the taking of property from the person or presence of another by the use of force. If you don't see the weapon. I believe so, and I believe People v. Leach and People v. Daniel agree with that, that there is no need for the dangerous weapon to be seen, or to be recovered, or presented to the jury. Because what that does is that rewards the defendant for controlling the crime scene, for taking the weapon with it, or for discarding it, or for destroying it. And in this particular case, it is not merely a threat. We don't have just merely a threat. But I would submit to your honors in People v. Leach, that's exactly what there was. There was merely a threat to shoot and stab the victim. There was no motion to an object. There was no object thrown. In People v. Leach, the court decided that threatening to use a dangerous weapon is enough to find the defendant guilty beyond a reasonable doubt. If he had not said, well, the testimony from her was he said that he was going to cut her. I mean, that puts a lot of importance on the word cut. I mean, dangerous weapons cut. Correct. So without that testimony, would the aggravated criminal section aggravation charge have held without the word cut? Well, it's an interesting argument. But we have the facts as they are before us. And they were presented to the trier of fact in this case. I believe that holding his hand behind his back and saying, instead of using the word cut, instead of the word harm, I'm going to hurt you, would have absolutely, in terms of an aggravated robbery, would have met the same burden. There is no requirement in an aggravated robbery that the weapon be seen. It is indicating that the individual has a weapon. And that's understandable. How about in an aggravated section? I believe that the threat to use a dangerous weapon, I'm going to hurt you. And the indications, remember, his words and his actions depict exactly what he was trying to do. His hands behind his back. He's grabbing this teenage girl off the street. And he is threatening to harm her. In this case, and we must focus on the facts that are provided in this case, because in the light most favorable to the people, the element is to be proved beyond a reasonable doubt, he did say he was going to cut her. He did say it more than one time. He said it three to four times. He said he was going to kill her five to six times. And he did throw an object that he had from behind his back into the front seat. And when that victim resisted and was not complying with him or was not subdued, he reached for that object to perpetrate this sexual assault. Well, absent an object, absent, I think what Justice Harris is alluding to, if I may proceed and speak for him, is if this person was accosted on the street, grabbed and thrown into the car as she was, and he said, if you don't do what I tell you to do, I'm going to kill you, and had his hand behind his back. Period. Is that enough under this statute to get the 10-year enhancement? When there is no, just by those words, if you don't do what I'm going to tell you, that's threatening, that's horrifying. Is that enough to get 10-year enhancement? Under this section, it says displaying a weapon, using a weapon, or threatening to use a weapon? Well, in the hypothetical that you're giving me, Your Honor, you haven't mentioned a weapon whatsoever or any indication of a way how that person was going to be killed. So I believe that it's not, I don't believe that it's the same. In the case that you have before you, this defendant threatened to cut her if she did not submit, which is a completely different issue than I'm going to kill you. There's no indication of a dangerous weapon there. However, the words. Not from her perspective. Absolutely. But in this particular manner, in the case beyond a reasonable doubt, improving each and every element with regard to threatening the use of a deadly, dangerous weapon, the hypothetical that you're giving me only says I'm going to kill you. It doesn't say how I'm going to strangle you or anything. I didn't mean that by the way. No, that's perfectly fine. I'm glad to answer any questions that you may have. I would like to address a counsel. You have two minutes. I will address it quickly. Counsel talks about the manner in which the case was charged and that the people should have charged it under a different section. Specifically, that an object was fashioned or utilized in a manner as to make one reasonably believe that object is a dangerous weapon. First, the people have the discretion in charging documents based on the evidence that we have before it. And there are many different ways to charge many different crimes, including lesser included offenses and lots of different modes for which that we can charge offenses. But in this particular case, that section is meant for an object that is inherently not dangerous, but is used in a fashion that is. And when we talk about that, we're talking about something like a flashlight, that if you bought it in a hardware store, it's not dangerous. But if you're going to threaten to hit someone over the head with a metal flashlight, that's certainly a bludgeon and a dangerous weapon. We had the evidence to prove that the defendant threatened to use a dangerous weapon against this victim. And it's important to recognize that it's not only from the direct evidence, but it is important that the circumstantial evidence that Judge Sachs provided a meaningful analysis in terms of this factual similarity, the proximity in time, and relevant circumstances of the defendant's propensity to commit aggravated criminal sexual assaults while using dangerous, sharp-cutting instruments is absolutely a piece of evidence that the jurors could use to find the defendant guilty beyond a reasonable doubt. So we ask your honor, based on the reasons that we've argued today and the reasons that we have cited in our brief, to affirm the defendant's conviction. Thank you. Rebuttal. Yes, your honors, I'll be very brief. The state reminds you to, urges you to rely on these reasonable inferences that it claims could be drawn from the trial record. And relying on the reasonable inferences in this case is a very slippery slope. The state urges you to rely on the other crimes evidence, which your honor pointed out was admitted for identity and propensity, not to establish an element of the offense as it was charged. And that was the whole reason that we argued that admitting that other crimes evidence was so prejudicial in this case. TV testified that it was a knife or a screwdriver in her case. So the jury could have been very easily confused as to was, in this case, which one is this? Is this CB? Was this, did he have an object in his hand? And the state cannot rely on other crimes evidence to establish an element of the offense, such as whether it was, in fact, a dangerous weapon. Also, the state argues about the second clause. The state argued that the second clause is for a situation where the object was used in a way that made the complainant reasonably believe it to be a dangerous weapon. And here, and she said that that's not, the state said that that's not the situation that was presented here. But here, we have no idea that what was in his hand. No idea. And I just want to keep reminding this court that under the way this particular case was charged, the state had the option, did have the option of charging it in the way that actually happened. You know, according to CB's testimony, that he used, he had something in his hand. She did say he had something in his hand and used it in a way to make her believe that in her case, it was a knife. She believed it to be a knife. The state didn't charge it that way. And so the state was bound to prove the way they charged the offense. And because the state did not do that, we're asking, again, to vacate that 10-year sentencing enhancement. Thank you. Thank you. Court will take this case under advisement. Thank you, attorneys, for your excellent oral argument and briefing. Taken under advisement.